MICHAEL V. CARUSO, P.C.
Michael Vincent Caruso, MC0117
3871 Danbury Road
Brewster, New York 10509
mvcarusolaw@gmail.com
Telephone:  (845) 207-5452
Facsimile:   (845) 251-0002

*Attorneys for plaintiff*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| EVERESTV, INC.,<br><br>                       Plaintiff,<br><br>-against-<br><br>BULLDOG INNOVATION GROUP, LLC,<br><br>                       Defendant. | **Docket No.**<br><br>**COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff EveresTV, Inc. ("Everest"), by and through its attorneys, complain of defendant Bulldog Innovation Group, LLC ("BIG") and alleges:

## **INTRODUCTION**

1. This is a case about power, control, and manipulation under the guise of the corporate form.

2. BIG is a venture capital fund formed by graduates of Yale University to fund venture entrepreneurs who are alumni of Yale University.

3. The organization of BIG was undertaken in 2014 by graduates of Yale University's School of Management, including, among others, Robert Quartel, Andrea Sehl, Jay Readey, and Thomas Halsey. Some of these organizers made loans to fund the formation and organization of BIG.

4. Everest was an early participant in BIG's formation and funding. Unfortunately, BIG's Board of Managers was bent on exacting a personal grudge against Everest's principal, Jeffrey Feldman, and subverted its own organizational documents and operating procedures to freeze out and destroy Everest's role in BIG without so much as the barest notice or an opportunity to be heard.

5. For these reasons, Plaintiff seeks legal damages and punitive damages against BIG and ask this Court to compel BIG's dissolution as it is unable, and evidently unwilling, to abide by its own foundational and governing documents and, instead, has attempted to re-write the rulebook in an unlawful manner to freeze-out minority unit holders such as Everest.

## JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction pursuant to 28 U.S.C § 1332(a) as complete diversity exists.

7. This Court has the authority to grant declaratory relief pursuant to 28 U.S.C §§ 2201-2202.

8. Jurisdiction over state law issues and claims is proper pursuant to 28 U.S.C. § 1367.

9. Venue in the Southern District of New York is proper under 28 U.S.C. § 1391(b)(2) as the events giving rise to Everest's claims arose in the Ninth Judicial District.

## THE PARTIES

10. Everest is a corporation duly formed in 1999 under the laws of the State of Delaware.

11. Everest maintains its principal office in the State of New York.

12. BIG was formed under the laws of the State of Delaware and maintains its principal office in the State of Connecticut.

13. There is complete diversity between Everest and BIG.

14. BIG is in the business of venture capital funding through an initial investment vehicle ("The Whitney Innovation Fund" or the "Whitney Fund"), independent solicitation of investors, and capital calls to fund growth.

15. BIG acts as the General Partner and Manager of the Whitney Fund, a Delaware limited partnership, which was formed by BIG to raise $20 Million of venture capital for investment by BIG in early stage companies over a five-year period. The investors in the Whitney Fund, Yale Graduates or Yale Faculty Members, are its limited partners and are not investors in BIG. The return on the limited partners' investment in the Whitney Fund is dependent upon the investment and fund-raising results achieved by BIG, acting as Whitney Fund's Manager and General Partner.

16. Everest entered into a Subscription Agreement with BIG whereby it would acquire Class A ownership interest in BIG. Additional interests of Class B, C and D units were acquired by Everest pursuant to The LLC Agreement as a result of services performed for BIG by Jeffrey Feldman, Everest's sole shareholder.

## FACTS COMMON TO ALL CAUSES OF ACTION

**A. BIG's Organization**

17. The organization and operation of BIG is governed by its Limited Liability Company Agreement ("LLC Agreement") signed by all Members, including Everest.

18. The LLC Agreement governs, *inter alia*, BIG's voting and the conduct of its affairs.

19. Section 4.1 of the LLC Agreement entitled "Establishment and Authority of the Board of Managers" provides that BIG's business and affairs shall be managed exclusively by its Board.

20. Section 4.2 of the LLC Agreement entitled "Action" further provides: (i) each Manager have one vote; (ii) the affirmative vote of Managers representing a majority of the Board shall be the act of the Board; (iii) all material BIG decisions require the affirmative vote of the Managers; and (iv) decisions of BIG's Board of Managers (the "Board") shall be taken at a meeting of the Board or reflected by a signed written consent.

21. Section 4.4(b) of the LLC Agreement provides that a Manager of the Board may only be removed by majority vote of Members of BIG following nomination for removal made by the Board acting upon the vote of two thirds (rounded up to the nearest whole number of the Board, excluding the Manager subject to removal).

22. At all relevant time herein, there were fifteen Members of BIG (including Everest) and seven Managers of the Board including Everest's principal, Jeffrey Feldman.

23. According to Section 5.1 of the LLC Agreement, any required action of the Members shall be by majority vote of "only those Members who hold Class A Units".

24. At all relevant times herein, Everest held 100,000 Class A Units, as set forth in Schedule 1 to the LLC Agreement and was entitled to vote as a Member.

25. No person acting in his or her capacity as a Member has authority to bind BIG, according to Section 5.2 of the LLC Agreement.

26. The LLC Agreement may not, according to Section 10.4 thereof, be amended except upon a two-thirds vote of the Board followed by the approval of the Members holding Class A Units, provided that no amendment may adversely affect the distribution entitlements, other right, or protection afforded by the LLC Agreement to any Class of Units without the approval of Members holding at least two-thirds of the outstanding Units of that Class.

27. Article III of the LLC Agreement provides for the issuance of Class A Units, Class B Units, Class C Units and Class D Units to Members evidencing ownership rights in BIG. According to Schedule 1 of the LLC Agreement, the following Units have been issued to Everest:

>    Class A – 100,000
>    Class B – 10,000
>    Class C – 500
>    Class D – 20.565

28. Schedule 1 of the LLC Agreement provides that Everest holds 100,000 of the total 1,945,000 Class A Units issued by BIG; holds 10,000 of the total 124,000 Class B Units issued; 500 of the total 800 Class C Units issued (or 62.5%); and 20.565 of the total 1,000 Class D Units issued.

29. Distribution of cash received by BIG is governed by Article III of the LLC Agreement, which provides that distributions will be made as determined by the Board, a General Partner of the Whitney Fund, which also determines the kind and amount of distributions by the Whitney Fund to BIG.

30. The Class C and D Units held by Everest are entitled to distributions only from "Carried Interest Proceeds" received from the Whitney Fund (Section 3.3(b)). Class A and B Units receive distributions from the Whitney Fund's distribution of "Investment Proceeds" (Section 3.3(a)). Whereas Class A Units represent capital invested by Members in BIG, Classes B, C and D represent Units awarded to Members who provide services to BIG (Section 3.1).

31. Section 5.7 of the LLC Agreement provides that no Member may be expelled from BIG or have his/her Membership interests terminated other than by reason of his/her violation of the "Confidentiality" provisions of Section 10.2 or the "Non-Competition"/"Non-Solicitation" provisions of Section 10.3 of the LLC Agreement, and/or his/her bankruptcy or receivership.

32. Section 5.7 further provides that violations of Sections 10.2 and Section 10.3, or the bankruptcy or receivership by or of a Member, these each constitute a withdrawal by the offending Member, in which case the withdrawn Member "shall continue to be bound by…[the LLC Agreement] as an economic interest holder only, and the Member shall have no right to compel the Company [BIG] to purchase the Member's membership interest or payback the Member's Capital Contributions", which in the case of Everest are stated to be $100,000 in Schedule 1 of the LLC Agreement.  Everest is a Member; Jeffrey Feldman is not a Member

33. Everest initially invested $20,000 in BIG, with a subscription commitment to invest an additional $80,000 for a total capital contribution of $100,000.

34. Everest holds or is entitled to hold 100,000 Class A membership units of BIG, 10,000 Class B membership units of BIG, 500 Class C membership units of BIG, and 20.565 Class D membership units of BIG, which constitutes more than twenty percent (20%) of all outstanding membership units of BIG.

35. Accordingly, Everest, as a BIG Member holding Class A units, is entitled to vote for, *inter alia*, the election of directors and removal or withdrawal of unit holders.  No other members are entitled to vote on any company matters.

36. None of the membership units of BIG is listed on a national securities exchange, or is regularly quoted in an over-the-counter market by a member of a national or affiliated securities association.

**B.  BIG Unlawfully Amended the LLC Agreement**

37. In approximately June, 2016, and without notice to Everest, BIG amended the LLC Agreement making significant changes to the voting rights and allocation of BIG's membership units (i.e. significantly diluting Everest's financial interests per its membership unit allocations).

38. In amending the LLC Agreement, BIG's Members (with the exception of Everest) violated and abrogated the LLC Agreement by creating the fiction that Everest forfeited its voting rights vis-à-vis Jeffrey Feldman's conduct allegedly violating the LLC Agreement's no-competition clause, and then proceeded to meet and vote in the absence of Everest on matters requiring its vote, as a Member. These matters included firing Jeffrey Feldman as BIG's Managing Director of Investments, removing Everest as a Member, and amending the Operating Agreement.

39. In doing so BIG, through the Board, made the following changes, among others, with the express intent to limit the rights of Everest and to otherwise squeeze out Everest as a minority owner:

(a) For reasons unknown to Everest, the Board stripped Everest of its voting rights as a Member and excluded it from all information concerning the business of BIG or meetings of its Members;

(b) The Board terminated Everest's Member voting that Jeffrey Feldman had allegedly violated the non-competition and confidentiality provisions of the LLC Agreement;

(c) Thereafter, without notice to either Everest, the Board proceeded to amend the LLC Agreement so as to materially alter the ownership rights of Everest to its units in BIG, and effective December 31, 2017 the Members of BIG adopted a Second Amended Operating Agreement (the "Amended LLC Agreement");

(d) The Amended LLC Agreement unlawfully reduced the holdings of Everest from 100,000 Class A Units to 20,0000, thereby implementing the illegal repudiation of Everest's subscription for 100,000 units and Everest's tender of the funds required by BIG's call for capital under Everest's subscription agreement. When on September 9, 2016, BIG refused to accept Everest's tender of the $10,000 demanded by BIG's capital call, BIG represented Everest would maintain its 100,000 Class A Units. The amendment repudiates BIG's prior representation;

(e) Prior to the illegal adoption of the Amended LLC Agreement, the LLC Agreement provided that Everest held of record 500 of a total 800 authorized, issued, and vested Class C Units, or 63% of vested Class C Units. The LLC Agreement (Section 10.4, prior to the 12/31/2017 Amendment) stipulated that the ownership rights of any class of units, including the C Units, could not be

adversely affected except upon the approval of Members holding at least two-thirds (66 2/3%) of that class, including Class C Units, of which Everest held 63%. Class C units represent a substantial, if not the most substantial opportunity for future profit flowing from the future performance of BIG and the Whitney Fund. Certain Board members, upon information and belief, concocted an illegal way to subvert Everest's Class C unit rights by: (i) increasing the Class units from 800 to 2,400, (ii) imposing a vesting requirement, thereby uninvesting Everest's Class C Units and effectively rendering them valueless unless and until the Board took further action to revest them, and (iii) some of the initial Class C Units granted to Everest were vested so as to significantly reduce the percentage of C Units held by Everest;

(d) Vesting was introduced by the Amended LLC Agreement to govern Class D Units, of which Everest held 20.565 vested units prior to the amendments. The number of authorized Class D Units was increased, thereby diluting Everest's Class D Units. The imposition of a vesting requirement ostensibly rendered these Class D Units worthless, pending further Board action. Vesting is governed by a separate agreement between BIG and the recipient; something that did not exist before the amendment and which has not been offered to Everest;

(e) A new Class E of units was introduced, which were not offered to Everest, and which are believed to adversely affect Everest's entitlements under its Class B, C and D units. The amendments place the new Class E units rights to distribution ahead of Everest's Class D units and takes away the percentage distribution of profits from the Class D and gives this to the Class E, a class denied to Everest;

(f) The amendments are intended to cause Everest to forfeit a large part of its heretofore vested Class B, C and D units, by providing that upon a Member's separation or withdrawal from BIG, all unvested units are forfeited;

(g) Additional amendments were made to the LLC Agreement, with the advice of Board member Jay Readey, who acted in his own behalf as an investor in BIG and as its legal counsel, to effectively subvert Everest's rights to protect its rights and interests under the LLC Agreement, to include:

    i.    The protections given to Everest's Class C Units by Section 10.4 of the LLC Agreement, requiring Everest's vote to amend the rights its Class Units, were subverted by providing for a 66 2/3% vote of **vested** Class C Units and the reclassification of Everest's 63% of Class C Units to be unvested and, thereby, not entitled to vote.

    ii.    Everest's principal, Jeffrey Feldman, was removed as a designated "Founding Board Member" and the right of Everest to vote and participate as a

        holder of Class B, C or D Units was eliminated by providing that only Class A Unit holder members could vote.

        iii.    The requirement that the Board act in "good faith" to remove a Member was eliminated, and additional language was added to expand the Board's ability to remove a Member for any "violation [which] is injurious", both measures which sought to address *ex post facto* the ability to expel Everest and remove its voting rights premises on an alleged violation of the LLC Agreement by Jeffrey Feldman.

40.    In sum, BIG's amendments to the LLC Agreement was a clever albeit misguided end-around that was engineered, upon information and belief, to financially cripple Everest's financial and voting stake in BIG.

41.    The Amended LLC Agreement represents the epitome of the Board abusing the corporate structure and a prolific level of conflicting interests designed to elevate and serve the needs of the few (i.e. Board members including Jay Readey, Robert Quartel, Andrea Sehl, *et al.*) at the expense of other Members (i.e. Everest).

### C.     Everest's Removal as a BIG Member

42.    On August 16, 2016 and allegedly by unanimous vote, BIG removed Everest as a member in clear breach of the LLC Agreement.

43.    On September 8, 2016, in response to BIG soliciting a capital call from membership unit holders including Everest, Everest made a $10,000 wire transfer to BIG corresponding with its allocation of membership units and its Subscription Agreement with BIG.

44.    Everest tendered to BIG the second capital call request of $10,000 on its subscription agreement, which BIG then unlawfully rejected in violation of its Subscription Agreement with Everest.

45. Everest was not provided notice or an opportunity to be heard in advance of BIG's purported unanimous vote on August 16, 2016 or its refusal to comply with its Subscription Agreement with Everest for membership units in BIG.

46. Thereafter, BIG withheld from Everest disclosure of quarterly financial reports, other required disclosure to unit holders, and the right to vote its ownership interests in BIG.

47. Everest has also been denied access to BIG information including periodic financial disclosure and records, which constitutes the most flagrant, oppressive freeze-out of a minority member of a limited liability company.

48. Everest's position as minority member was and is reduced to a mere title and has not been afforded any real authority or role in BIG's operation.

49. Everest has been effectively precluded from participating in BIG's management to which it and its principal, Jeffrey Feldman, have devoted considerable time and energy over two years respectively, and to which Everest looks for current and future financial security and return on its investment, which actions constitute a freeze out.

50. BIG is at present entirely solvent and wholly able to pay all of its obligations in due course.

51. BIG's oppressive actions, through its Board, officers and directors as set forth herein have severely damaged Everest's financial security and constitute a freeze-out of Everest's interests.

52. BIG, through a purported majority of its Board of Managers, acting in concert has engaged in oppressive action to defeat Everest's reasonable expectation that it is entitled to a share of corporate earnings, a place in corporate management, and other financial security attendant to the ownership of the aforementioned minority membership units.

53. BIG, through its Board of Managers, knew or in the exercise of reasonable judgment should have known of Everest's expectations herein referred to.

54. No remedy exists, short of dissolution of the company, to properly protect Everest's rights and interests.

55. BIG, through its Board of Managers, has over the past two years pursued a course of conduct that has prevented Everest from properly protecting its investment as a minority member.

56. As developed below, Everest has no adequate means of recovering its investment or equity, short of dissolution.

## AS AND FOR A FIRST CAUSE OF ACTION
### (Minority Shareholder Oppression)

57. Everest repeats and realleges each and every allegation as though restated herein.

58. By operation of the LLC Agreement and Amended LLC Agreement, BIG's internal affairs are governed by the laws of the State of Delaware; specifically, the Delaware Limited Liability Company Act.

59. Everest seeks an order and judgment of the Court dissolving BIG because Board and Members, who are those persons in control of the limited liability company have acted, are acting or will act in a manner that is illegal, oppressive or fraudulent toward Everest and other similarly situated minority unitholders.

60. Everest has no adequate remedy at law or pursuant to The LLC Agreement other than the liquidation of BIG.[1]

---

[1] Everest previously stated a cause of action in the form of a counterclaim against BIG in a related action commenced in Connecticut Superior Court (J.D. Stamford at Stamford) entitled: *Bulldog Innovation Group v. Jeffrey Feldman and EveresTV, Inc.*, Docket No. FST-CV-17-6032763-S (the "State Court Action"). BIG, in the State Court Action, moved to dismiss Everest's First Counterclaim seeking dissolution under Connecticut's Limited Liability Company Action (codified as C.G.S. § 34-267, *et seq.*). By its Decision and Order, entered on July 16, 2018, the State Court

61.     By terminating the voting rights of Everest, which are represented by Class A units pursuant to the Operating Agreement, Everest is unable to protect and/or receive any distributions under its Class B, C and D units. Distributions to Class B, C and D unit holders are dependent upon the vote of the Class A unit holders, who Everest alleges can and will vote so as to preclude any future distributions to Class B, C and D, which in certain instances are more valuable than Class A units in terms of future rights to distributions and the majority of which are in certain classes owned by Everest. Ostensibly, the rights of a Class B, C and D unit holder were defeated without a vote taken of those classes, in violation of the protection granted minority interests such as that of Everest.

62.     BIG, through its Board, abandoned the terms of the LLC Agreement in violation of both its terms and the Delaware Limited Liability Company Action, choosing instead to fabricate a "no win scenario" for Everest in amending the LLC Agreement whereby Everest's rights as a Member were eviscerated.

63.     In addition to the oppressive conduct perpetrated by BIG's Members and that of the Board, whereby the voting and other membership rights of Everest were disallowed, the LLC Agreement violates the public policy and laws of the State of Delaware inasmuch as the LLC Agreement, as amended, authorizes the withholding of fundamental voting and participating rights of owners of minority membership units, thereby destroying the value of same without just compensation.

---

dismissed this Counterclaim observing that, *inter alia*, the "laws of the State of Delaware shall govern the [LLC] Agreement, and that dissolution shall occur only upon Delaware's Limited Liability Company Act."  A true and corrected copy of this Memorandum of Decision in the State Court Action is annexed hereto as Exhibit "A".

64. BIG's conduct, through its Board in amending the LLC Agreement and in terminating Everest's voting rights, frustrated Everest's reasonable expectations to participate in the management and affairs of BIG as a minority unitholder with voting rights.

65. BIG's conduct in this regard, and as it applied to Everest and other minority unitholders in BIG, was and is burdensome, harsh, and wrongful.

66. The Court is now justified in dissolving BIG because on the one hand its Board and Members do not abide by the LLC Agreement to the extent it is legal, or function in accordance with the strictures of the Delaware Limited Liability Company Act. And on the other hand, the Amended LLC Agreement and its predecessor, as applied to Everest, effectuated a forfeiture of Everest's membership interests in BIG without any notice or an opportunity to be heard, which violates public policy.

67. As such, the LLC Agreement and Amended LLC Agreement should be declared void and unenforceable, and BIG must be dissolved and its assets liquidated.

## AS AND FOR A SECOND CAUSE OF ACTION
**(Declaratory Judgment - *Ultra Vires* Actions)**

68. Everest repeats and realleges each and every allegation as though restated herein.

69. Everest was not provided any notice that BIG, through its Board, was proposing changes to the LLC Agreement that would later be adopted.

70. In amending the LLC Agreement by making significant changes to the voting rights and allocation of BIG's membership units and, consequently, diluting Everest's distribution entitlements and financial interests in BIG, the Board materially breached the LLC Agreement; specifically, Sections 4.1, 4.4(b), and 5.1.

71. An actual controversy exists between the parties insofar as BIG has violated the LLC Agreement and the Delaware Limited Liability Company Act in amending the LLC Agreement to freeze out and render meaningless Everest's rights as a Member of BIG.

72. Everest thus seeks a determination of the Court that BIG has materially breached the LLC Agreement and violated the Delaware Limited Liability Company Act as set forth herein.

73. Upon information and belief, BIG's decision to amend the LLC Agreement, through the actions of the Board, were not undertaken at a duly constituted meeting of the Board or reflected by a signed written consent consistent with the strictures of Section 4.2 of the LLC Agreement.

74. Everest now prays for a judgment declaring the rights and other legal relations as between the parties with respect to the LLC Agreement and Amended LLC Agreement; specifically, that because BIG materially breached the LLC Agreement in attempting to adopt the Amended LLC Agreement, the Amended LLC Agreement was and is *ultra* vires, void, and of no force and effect since it was promulgated in violation of the LLC Agreement's clear terms.

75. Everest has no adequate remedy at law.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment against Defendant as follows:

(a) On Everest's First Count, an order of this Court dissolving and liquidating defendant Bulldog Innovation Group, LLC;

(b) a declaration that BIG's adoption of the Amended LLC Agreement was *ultra vires*, void and of no force and effect;

(c) trial by jury;

(d) compensatory damages in an amount to be proven at trial;

  (e)  punitive damages in an amount to be proven at trial;

  (f)  costs, disbursements, and reasonable attorney's fees; and

  (g)  for such other and further relief as the Court deems just, proper, and equitable.

Dated: Brewster, New York
   April __, 2019

             Respectfully submitted,

             By: /s/ *Michael V. Caruso*
             Michael V. Caruso (MC0117)
             Thomas J. Romans, *Of Counsel*
             Michael V. Caruso, P.C.
             3871 Danbury Road
             Brewster, New York 10509
             mvcarusolaw@gmail.com
             Tel: (845) 207-5452
             Fax: (845) 251-0002

             *Attorneys for plaintiff*

To: Robert S. Hoff, Esq.
   Wiggin and Dana, LLP
   Two Stamford Plaza
   281 Tresser Boulevard
   Stamford, Connecticut 06901

   *Attorneys for defendant*